No. A-CR-02-81

## COURT OF APPEALS OF THE NAVAJO NATION

June 11, 1982

Eugene LaMONE, Appellant,

vs.

THE NAVAJO NATION, Appellee.

OPINION

George Harrison, Esq., Farmington, New Mexico, for appellant and Wayne Cadman, Esq., Prosecutor's Office, Window Rock, Navajo Nation (Arizona) for appellee.

This is an appeal from the conviction of Eugene LaMone for the crime of trespass with force. The arrest, trial and conviction of the defendant were all connected with the occupation of the Consolidated Coal Mine site at Burnham, Navajo Nation (New Mexico) during July of 1980.

The events and facts of this case are somewhat confusing due to the state of the record, but the Court will attempt to set them forth in a logical fashion before discussing their legal aspects. This appeal was not heard upon the full record of the case in the trial court for reasons which will be discussed below, and the factual basis for this appeal is founded upon the files of the matter, such as they are.

The property of the Burnham Consolidated Coal Mine was occupied by demonstrators, and the defendant was arrested without warrant by the Navajo Police Department. He was then charged with the crimes of criminal entry into the property (Case no. SR-CR-7527-80), criminal damage to property at the site (Case no. SR-CR-7526-80), unauthorized use of a motor vehicle (SR-CR-7765-80), unlawful imprisonment (SR-CR-7766-80) and trespass with force (SR-CR-7767-80). The first three charges were washed out by the motion of the prosecutor withdrawing them. The file shows the defendant was acquitted of the charge of unlawful imprisonment, so only the charge of trespass with force remained.

There are two verdict forms in the file. Both have the signature of the jury forman, and one says "guilty," while the other says "not guilty." The complaint for the charge of trespass with force has two docket numbers: No. WR-CR-6644-80 and SR-CR-7767-80. (The venue of the case was changed from Window Rock to Shiprock). A

judgment and mittimus dated December 15, 1980 (No. SR-CR-6644-80) shows the defendant was acquitted by the action of the jury, while another dated February 12, 1981 (No. SR-CR-7767-80) shows a conviction. The record of the case is, to say the least, unclear, with conflicting judgments and jury verdicts which do not identify the charge.

The contentions raised by the defendant in his appeal are: 1) There was an illegal warrantless arrest, 2) the complaint was insufficient because of the lack of knowledge of the complainant; 3) there was insufficient evidence to support the verdict, and 4) a stay of execution should have been granted. Issue 4 is moot and issue 3 will not be reached because of our reversal on other grounds.

## THE NEED FOR A WARRANT IN DEMONSTRATION SITUATIONS

The defendant has briefed his case very well, particularly with regard to the law of illegal arrest. The court does not have the benefit of a brief on the part of the prosecution so it will rely upon facts contained in the defendant's brief. (We would have thought the prosecution would be well-prepared to brief a case with such importance as this case has).

The arresting officer did not see the crime of trespass with force committed in his presence and made the arrest upon the statement of another officer who also did not see any illegal events, the defendant's brief states.

Our arrest statute, 7 NTC Sec. 1804, indicates an arrest can be made by a Navajo Police Officer 1) where the offense occurs in the presence of the arresting officer, 2) where the arresting officer has "reasonable evidence that the person arrested has committed an offense," or 3) where the officer has an arrest warrant. Arrest upon the commission of an offense in the presence of the officer is the most obvious, and since the facts to support the main charge merge with the justification for the arrest, that ground for arrest is usually adjudicated at trial and does not become the subject of a pretrial motion. The other ground we are concerned with is an arrest on reasonable evidence the individual has committed an offense. The test for this ground for officers is:

> "Whether at the moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

The standard under our statute is not "probable cause" - it is "reasonableness." When the arresting officer makes his arrest, can he satisfy the judge there was enough evidence to believe the individual had committed an offense or was in the act of committing an offense? This judgment is to be made on all the facts the officer had before him and not on the basis of picking out and pooh-poohing an individual element of an offense. See United States v. Pearson, 448 F.2d 1207 (CA 5, 1974).

In this case, although the arresting officer did not see an offen-

se being committed, he could have had sufficient information to have reasonable evidence of a committed offense. While we do not here bar an appellate review of reasonable cause for arrest, normally the trial judge's factual determination of such reasonable cause will not be overturned on appeal. The trial judge here found the arrest was proper and we are not necessarily in a position to overturn that determination. After all, the defendant was not only arrested for trespass with force at that time but for other offenses as well. There may well have been sufficient evidence to support the arrest for the other charges which were allegedly committed wthin a short time before the arrest.

The appellant's complaint is that since the compound was surrounded by about 75 armed police and it had been secured from about 10:00 a.m. until the time of the defendant's arrest at about 1:30 p.m., there was plenty of time to get a warrant. However that is not the way demonstration and occupation situations work. The police here used fairly standard procedures. They surrounded the compound, arrested individuals who are clearly inside the Consolidated Coal area, and they photographed the defendant with arresting officers to tie him to the unlawful occupation. This is standard procedure, and because of the numbers of defendants present, the difficulty in identification from afar and the nature of the situation, arrest warrants are simply not practical as normal riot procedure. See Standard 7.3, "Organizing for Control," National Advisory Commission on Criminal Justice Standards and Goals - Police (1973); Standard 7.4, "Mass Processing of Arrestees," Id.; Report of the National Advisory Commission on Civil Disorders, pp. 347-348 (Bantam Ed., 1968). (None of these authorities call for arrest with warrant).

WHO MUST SIGN THE COMPLAINT

The defendant complains the individual who signed the complaint had no knowledge of the charges against him and did not appear at trial to testify. That appears to be the case, since a number of witnesses were listed on the complaint and the officer signing the complaint, Doyle Hughes, was not listed with them.

Simply because an individual who signs a complaint and does not appear at trial, that is not necessarily sufficient to challenge the validity of a complaint. The ability of the prosecution to prove its case is a matter entirely independent from the sufficiency of the complaint.

The statute setting forth the complaint form requirements, 17 NTC Sec. 1801, indicates the complaint must be signed by the "complainant" or the "complaining witness." The "complainant" is clearly the victim of the alleged offense, e.g. the individual who is assaulted in an assault case. The "complaining witness" we hold to be an individual who is a witness to an offense. Now the problem arises as to whether the complainant or the complaining witness need actually see the offense being committed. This would be absurd, since many crimes are proved by circumstantial evidence with no eyewitness. We hold it sufficient for any victim of an offense to sign the complaint and any witness connected with the prosecution of an offense to sign a complaint, as long as they have knowledge of the offense. It is sufficient when the complaining witness has enough knowledge of the offense charged to have personal reasonable cause to believe the offense

was committed by the defendant. The purpose of the statute is clearly to provide a guarantee that charges are not brought against an individual recklessly, and we will uphold any complaint signed by an individual with reasonable grounds to believe a crime was committed by a given defendant. This is an old statute from a time before organized prosecutors. The better rule would be for the victim or prosecutor to sign the complaint. That is a matter for the Navajo Tribal Council.

In this case the court will find the complaint to be defective for the reason the officer who signed it was not listed as a witness and was not shown to have knowledge of the offense.

## THE RECORD ON APPEAL

As is apparent from the review of the facts above, the trial court record was a mess. This court found the trial documents out of place and in improper order, and this court had to struggle to trace the progress of the proceedings below. In addition we found documents which contradicted each other. At one point the court concluded the defendant had been acquitted at trial.

The right to appeal is the right to have a matter heard on a clear and intelligent record. In criminal matters the right to habeas corpus means that a reviewing court must understand the precise basis for conviction and exactly what happened.

Clerks of court are admonished that their certificate of the completeness of a file on appeal includes a certificate and duty to have the file in proper order. Trial judges are cautioned that the basis for their rulings should be clear, and contradictory documents should be explained by means of clear annotations or explanatory documents.

This case was set for a trial de novo because of the absence of the tapes of the trial below. A trial do novo can be of great disadvantage to a criminal defendant because, if the defense presents a case below, the prosecution has foreknowledge of the defense case during a trial de novo. While this may not reach the level of jeopardizing a defendant's right to not present an affirmative defense (i.e. the right to remain silent), it is sufficient concern to hold that this defendant's rights were violated by not providing a clear record on appeal.

The general rule on appeal is that the appellate court must determine the case on the record, and the record must be prepared so the court can intelligently consider any questions raised on appeal. 4 Am.Jur.2d, Appeal and Error Secs. 399, 491. Appeals courts normally cannot rule on questions which are not supported by the record, even though those questions may have been decided by the trial court. Id., Sec. 491.

In our court system appeals are not legally a matter of right, and the Chief Justice may deny a request for an appeal unless he finds there is probable cause to review the decision of the Trial Court, i.e. reason to believe the Trial Court may have been in error. 7 NTC Sec. 801. The Court of Appeals of the Navajo Nation is sensitive to the demands of the Navajo People and non-Indian litigants in our courts that they have an opportunity to have their cause reviewed by us, and we note that it is the normal practice of the Chief Justice and Acting Chief Justices reviewing appeals to grant an appeal unless it clearly appears we do not have jurisdiction in the matter (normally because of

an untimely notice of appeal), or the appeal is clearly frivolous. This, therefore, becomes a practical right to appeal, and where the record of the Trial Court is such that appeal rights will be denied through the inadequacy of that record, this court may independently set matters right through a trial de novo or assuring harm will not be done. In this case this court should have had to hear a trial do novo, because the major questions presented should have been a matter of clear record.

Therefore, considering the facts of this case and the particular record involved here, we will reverse for the denial of the right to a fair appeal. This court will review any claim of the denial of the right to a fair appeal on a case-by-case basis and we will take action such as that taken here only in the most unusual circumstances.

## MATTERS OUTSIDE THE RECORD

Following the consideration of this case and after making our decision, our attention was drawn to the fact there were attempts to lobby the Chief Justice and the Court. These attempts were not made with the knowledge or cooperation of the attorney for the appellant, and no criticism is made of his action. It appears that this appeal was partly financed by European and American supporters of Indian causes. Some of those supporters took it upon themselves to write to the Chief Justice, and letters were received from places such as Tollarp and Rehnholm, Sweden; Copenhagen, Denmark; West Germany; and Berkley, Alameda and San Francisco, California. There was a letter from an attorney in San Francisco demanding the defendant's release. This discussion is made because the Court wants to make a point: We appreciate the fact there are supporters of Indian causes in many parts of the world, but they should reflect on the fact they do not truly support Indian self-determination by trying to undermine the processes of tribal government. We were not lobbied by the letters because the Associate Justices did not see them and the Chief Justice did not mention them or rely upon them in his discussions with the whole Court. This Court will never consider any matters which are not a proper part of the record and we will not be swayed by attempts to lobby us. While it is commendable that Mr. LaMone's supporters in Europe and America assisted him with his appeal because they felt matters of principle were involved, some of the supporters did dishonor to the cause of the self-determination of Indian Nations and the cause of Indian Courts in their attempts to coerce this Court through letters. Those individuals should carefully reconsider whether they have truly supported the Indian cause in this case.

The conviction of the defendant is hereby REVERSED and the charge of trespass with force is DISMISSED.